The next case on calendar for argument is Hopson v. Alexander. Good morning, Your Honor. Can you hear me okay? Yes. Perfect. My name is Alex Lindvall and I represent the defendant officers in this case. I'd like to reserve one minute for rebuttal, so I'll keep an eye on the clock and be mindful of my time. All right. But in any case, I'm hoping to keep my prepared argument pretty short. You're familiar with the facts of this case and the comprehensive. So my main concern is just making sure I address any lingering questions the panel might have. So I invite you to interrupt me with questions and please let me know if there's a specific area or issue you'd like me to focus on. With that being said, I think the path of least resistance for this court is to jump straight to the second prong of qualified immunity and hold that the law was not clearly established in this case. Although this court has held that it is unconstitutional for an officer to point a weapon at an unarmed misdemeanor in his own home, this court has never held that it's unconstitutional for an officer to point a gun at a suspect during a high-risk traffic stop. In fact, the opposite is true. And that's the crux of this case, in my view, to overcome the officer. Counsel, you invited us to interrupt, so I will. Yeah, please. So are you characterizing this encounter as a high-risk traffic stop? Yes, Your Honor. They were stopping the suspect on suspicion of casing a gas station for an armed robbery. And in any case where the officers believe that they're going up to someone with a weapon, that's always going to be considered a high-risk traffic stop in the eyes of a reasonable police officer. But, Counsel, wasn't the vehicle already stopped, already parked? It was stopped, but the occupants didn't know the police were coming up. They didn't have the red and blue lights on. They just kind of approached very quickly, and they wanted to almost take the suspect by surprise so that they couldn't reach for a gun in the intervening moments before they got to the window. Continuing. Was that belief objectively reasonable? I think it was, yeah. The officer on the scene observed the plaintiff and his associate for over 15 minutes doing very suspicious activity in the parking lot. He was consistently moving his vehicle, backing in each time, craning his body around the vehicle to get a really good look at all of his surroundings. And he appeared to be abnormally nervous in the officer's view. And this just isn't typical behavior for someone who's going to a gas station to buy a soda or get gasoline. This was something that really aroused the officer's suspicions. And the facts of the case are very similar to Terry v. Ohio. So I think any reasonable officer in this officer's shoes would have think they had a reasonable suspicion in this case because it's very similar to Terry, one of the seminal Fourth Amendment cases from the Supreme Court. So to overcome the officer's... Counselor, I'm sorry. Can I interrupt you for a moment? And I may be confusing which of the two individuals was involved in that activity. But I thought it was Mr. Jones who had been there for 15 minutes apparently casing the gas station and that Mr. Hobson arrived separately and his interaction was to get into Mr. Jones' vehicle. Unless I have the two individuals mixed up. But, you know, Mr. Hobson, if he was not the one who was engaged in this activity that you anything that would provide the officer reason to think he was engaged or about to be engaged in an armed robbery? Yes, Your Honor. And the district court and plaintiff's attorneys both concede that or I mean the plaintiff's attorneys concede that point and the district court recognized that in its order. When you are intimately associated with someone who appears to be casing a gas station, the officer can reasonably assume that both people are in on the job. And the same thing happened in Terry. I think in Terry there were three suspects who were all suspected of casing a convenience store and the officer had justification to stop all three of them, even though only one or two of them was going and being suspicious near the convenience store. To overcome the officer's claim to immunity in this case, the plaintiff needed to point to a controlling case that it held that pointing a gun at a suspect during a high-risk traffic stop was unconstitutionally excessive. He hasn't. On the contrary, this court and every other court to address the issue has held that the police can point their weapons at a suspect if they have reason to believe the suspect is armed and engaged in criminal activity. And this is particularly true during traffic stops, which are especially dangerous and scary for police officers. To quote this court, it is well settled that when an officer reasonably believes force is necessary to protect his own safety or the safety of the public, measures used to restrain individuals, such as stopping them at gunpoint and handcuffing them, are reasonable. And the Seventh Circuit has said this even more emphatically, quote, courts do not find constitutional violations for gunpointing when there is a reasonable threat of danger or violence to the police. Counsel? And to quote, yes. You said that this case was similar to Terry. Could you point me in Terry where the officer pulled the gun when he approached the suspects? It's very similar to what the suspects were doing in that case. The officer's force in Terry was more mild than the force alleged in this case. Was a gun ever pulled in Terry by the off the suspect? But no, not by the officer. Exactly. So this case is a little different than Terry in that you're trying to say that the use of the weapon was not excessive force and there was no use of a weapon in Terry. I totally agree with all of that. I wasn't citing Terry to say that this use of force was reasonable. I was just citing Terry to show that the officers did have reasonable suspicion to go up to these suspects in the first place. Right. But the question is whether or not they used excessive force. Correct. As a result of their encounter with Mr. Haas. And to answer to answer those questions, I would point this court to this decision in Alexander and the 7th Circus decision in Williams. And if you want to, if you're those are on whether it was reasonable or not, if you want to go to the excessive or the clearly established prong, I would point this court to the recent memorandum decision in Smith versus Stockton. Well, you know, that's not that's not binding on us. So of course, but I know, of course, but I do find the logic of that case very persuasive and it largely mirrors the logic of my brief. So if this court does read that and find it persuasive, I think that is the reasoning the court should use to resolve this case. But to go to the first pronger qualified immunity, whether this was reasonable in the first place in Alexander, this court held that several police officers did not violate the Fourth Amendment when they pointed their guns at two suspects because the officers reasonably but mistakenly believe the suspects were involved in an armed robbery. In no uncertain terms, the Alexander court told police officers that they may point their weapons at a suspect if they reasonably believe the suspect is armed and potentially dangerous. But counsel in Alexander, the robbery had already occurred. Correct. But I don't think that's a meaningful distinction, Your Honor, because someone about to commit an armed robbery is just as dangerous as someone who just committed an armed robbery. If there is reasonable suspicion to suspect the person is going to commit an armed robbery, that's different than someone than than a robbery actually haven't been committed. There is more exigent circumstances in the latter scenario. I can see that argument, Your Honor. But if you think if you reasonably think someone's about to go pull a gun on an innocent gas station teller, there's plenty of exigency there that would justify gun pointing, in my view. And the rule that police can point their guns at someone that they think is armed and about to commit a very violent crime, that rule is known to police. That's understood by and it's relied on police while they're doing their jobs. What was the evidence that the officer relied on to come to the conclusion that Mr. Hobson was armed? I mentioned a few earlier. Mr. Hobson, the plaintiff's his associate, came to the gas station first. He was repeatedly moving his vehicle, parking it, reverse parking it into parking spots multiple times. And every his surroundings. And the officer on the scene believed this was because he was looking for either witnesses or escape routes or cameras or something along those lines. And the fact that he backed his car and each time led the officer to believe that he was trying to obscure his license plate or make the car more quickly for a getaway, backing it and he can just pull right out. He also saw that the occupant was just behaving abnormally nervous and really just kind of scanning the parking lot like crazy, which is just not something that you would expect to see from a normal gas station. Is it your view that that then was sufficient to establish reasonable suspicion that Mr. Hobson was armed? Yes, because the crime he was suspected of committing was casing a gas station. And it's reasonable for an officer to believe that you're about to go rob a gas station, you're going to use a weapon. And the officer was correct. In this case, once he actually searched the vehicle, he found that there was an illegal firearm. Well, the issue is the issue is at the time he apprehended them, whether or not there was reasonable suspicion, not after the fact, but at the time. So the state court proceedings, what do we do with that in terms of the fact that there was a finding that there was not a sufficient basis for for the criminal proceedings? I don't think that decision has any preclusive effect for this court. No, it doesn't. But it informs our it informs the case. And it did for the district court as well. Sure. Yeah. And the district court held that a reasonable police officer and the officer shoes in this case, quote, easily could have thought they had a reasonable suspicion in this case because the facts are so similar to Terry people being very suspicious in front of a gas station or a convenience store arouses suspicion in police officers. And they are allowed to go investigate that. And that police officers are not required to just sit back and wait for a crime to be committed before they go see whether these guys are up to no good. But the district court denied qualified immunity, correct? On the unlawful stop or on excessive force? On excessive force. Yes. On excessive force, they did deny our qualified immunity motion, but they did grant it on the unlawful stop issue. So they did find that the officers at least could have believed that they had a reasonable suspicion in this case. And the court did cite Terry for that conclusion. So I mentioned Alexander. I really think that's the main case this court should look at for the first pronger qualified immunity. But it should also look at Williams, the Seventh Circuit's case there. The Seventh Circuit held that the police acted reasonably when they pointed their guns at a suspect. They reasonably but mistakenly believe committed a robbery earlier in the day. And in Williams, the plaintiffs were only suspected of committing a, quote, robbery. They weren't even expected committing a armed robbery. But the court nonetheless found that the officer's gun pointing was reasonable because it was reasonable for officers to, quote, assume the worst when they are engaged in a high-risk traffic stop. To quote Judge Posner, if you are a police officer with a reason to believe that there may be an armed robber in a vehicle, you approach with the utmost caution, which may include pointing a gun at the occupants. Alexander and Williams both show that the defendant officer's conduct in this case fell within the bounds of the Fourth Amendment. And these cases aren't unique. They're just two in a long line of cases that have held that police do not violate the Fourth Amendment when they point their guns at potentially dangerous suspects. For the second pronger qualified immunity, I understand it's a memorandum decision and it's not binding. But I think the court's recent decision in Smith v. Stockton is the exact analysis this court should apply in this case. There, the court found that pointing a gun at a suspect during a traffic stop has never been clearly established as excessive force in this in Robinson, Cameron, and Tiegel, the same cases the plaintiff is relying on in this case in denying qualified immunity. On appeal, this court reversed. Because the gunpointing in Smith happened during a traffic stop, a circumstance that is especially fraught with danger for police, this court held that its prior gunpointing cases just simply were not on point and did not squarely govern the case at issue. And this court should rule the same here. I think that would be the path of least resistance for this court. Counsel, what is your response to the plaintiff's argument that excessive force was also used by yanking him out of the car? Just to go back to Alexander, the quote that I said earlier, this court has said that it is well settled that if an officer reasonably believes force is necessary to protect the safety or the safety of the public, measures to restrain individuals such as stopping them at gunpoint and handcuffing them are reasonable. We allow officers to use greater than normal uses of force if we think that the suspect is about to commit a violent crime involving a weapon. In this case, I don't really know what yanking means, but I guess if you're going to assume yanking is the most violent form of yanking because the procedural posture of this case, I still think that's totally reasonable because they suspected this person was about to go point a gun into the face of an innocent gas station attendant. I mean, the officers were... Does it matter that the officers did not identify themselves as officers straight away? No, I don't even really understand that argument. I mean, that seems just like kind of like the used to apply. If the officers had announced themselves as police officers, would that make their force any more or less excessive? I don't think so. Well, the thing about it is someone could reasonably believe if an uniformed person came up to them, they could think they were being robbed or that they were being mugged if the officer doesn't identify himself as an officer. So it increases the oftentimes when once a firearm comes out, the stakes go up much higher than if there is no firearm drawn. I agree in part on that. I think that not announcing yourselves could have the potential to maybe make the situation a little more tense because the suspect could think, holy cow, I'm being mugged by some random guy or something like that. But I don't think it would make it more prone to violence. If you pointed the gun at someone at anything, that's going to make the guy throw his hands up and not reach for the gun that was by his side. Well, there are a lot of police. There are a lot of police shootings that come out of traffic stops. And once the gun comes out, sometimes the gun goes off. And so I don't think we can minimize the fact that once the gun comes out, there's the potential for serious injury or death is escalated. I would agree with that, but I still don't think that that makes the force actually applied in the case any more or less excessive. I mean, granted, if you pull a gun on someone, you're raising the temperature of the situation. But in this case, it was a reasonable precaution because they thought they were going up to an armed robber. And if you place yourself in the officer's shoes, imagine you were put in a situation where you had to go approach what you really thought was an armed robber. I mean, you would take every precaution within reason, I imagine. And that's what the officers did in this case. And this court shouldn't hamstring officers in a high-tense, high-stress situation. In this case, it's just going to be a question for the jury. We're not saying that the officers lose if we disagree with your argument. It's just that it goes to a jury for the jury to determine whether or not there was excessive force used. I don't think so, Your Honor, because in this case, you can take all the material facts you want and assume them or take them in the light most favorable to the plaintiff. But even if you do that, I think I still win. So there's really no reason for this case to go to a jury because I win on even the plaintiff's best case. Now, the better... Go ahead. I'm sorry. About approaching without announcing, there was something that suggested that, or that Officer Alexander called for backup and the officer that arrived was that officer in a marked patrol car? I don't believe so. Both of the officers involved in this case were violent offender officers. They almost always drive unmarked vehicles. They had red and blue lights, but it wasn't an obvious police cruiser. Okay. I'm well over time. I just wanted to ask you one other question. You said taking the version of facts in the light most favorable to the plaintiff, but in his version of the facts, their activity was innocuous. So if we take their version of the facts, it doesn't give a basis for use of force. I just want to make sure I'm understanding your question. You're saying the plaintiff says that I wasn't doing anything sketchy and even the slightest, and you want to know if you have to assume that's true? Is that your question? Well, if we are assuming the facts in the light most favorable to the plaintiff, that's what his version is. I think that's really only come up in the briefs and it's just an unadorned... The officers didn't do what they actually said they did in this case. I don't think that's enough to make a genuine issue of fact in this case. The officers have signed declarations going through step by step what they saw the plaintiff and his associate doing that aroused their suspicions. I think that... But we can't resolve credibility issues. We can't resolve credibility issues and we can't take the officer's declarations as the version of the facts. Correct, but I don't think the plaintiff's version of the facts differ that much differently from the officers. Really, the only point of disagreement is whether the officers pointed the guns in the first place, but I've been willing to assume for the purposes of this appeal that they did. But I think that the plaintiff admits that he did most of the things that the officers were suspecting and most of the things the officers saw that aroused their suspicions were formed by a third party before the plaintiff was even there. So we can't create a genuine issue of fact by saying none of that happened when he has no personal knowledge of what happened. I didn't do anything and they pulled the gun on me. Right, but the officers' suspicions weren't really aroused by Hobson as much as they were by his associate. Now, Hobson wasn't there for the associate's suspicious behavior, so he can't create a genuine issue of fact by just saying, oh, my colleague was, you know, didn't do anything wrong either. The officer saw it happen and the plaintiff wasn't there, so there's no genuine issue of fact. That's the difficulty. If the plaintiff said, I didn't do anything and I got a gun pulled on me, why don't we accept that version of the facts for him? You can assume that the plaintiff didn't do anything that was overly suspicious, but the officers did have reasonable suspicion to think that those two men were about to commit an armed robbery. And in that case, they are, that court has said and every other court that I'm aware of has said that the officers can point a gun at them under those circumstances. All right, thank you. Thank you, counsel. We'll give you a minute for rebuttal. Oh, thank you. Good morning. May it please the court. Margarita Lodero for Mr. Hobson. Appellant's arguments depend on a single factual assumption, that they reasonably believed Mr. Hobson was armed and dangerous. But the district court found exactly the opposite to be true. The district court found, and I quote, defendants have not pointed to any evidence in the record that demonstrates that they believed, reasonably or otherwise, that plaintiffs had a weapon or that he otherwise posed a threat to their safety or the safety of others when defendant Alexander approached plaintiff's vehicle. That's ER 19. The court said, quote, defendants have not pointed to any evidence that suggests that they had reason to fear for their safety or that plaintiff was armed merely because of the plain smell of marijuana. That's ER 19 to 20. The court then said, quote, defendants did not have reason to believe that plaintiff was armed when defendant Alexander approached plaintiff's vehicle. We can't get inside the heads of anybody, but we can look at reasonableness as an objective matter, and that is a legal question. And so I guess the question here is, under the second prong of the qualified immunity analysis, what precedent do we have that tells us that this was, this constitutional violation was beyond debate? The clearly established law in this circuit is that even when you have a reasonable suspicion to conduct the stop, there must be some objective criteria that forms the basis for a reasonable belief that a suspect is armed and dangerous. And I will quote this court's decision in Brian B. McPherson. But we have to be specific. What is the case that tells us that when you observe somebody doing this kind of thing in a gas station, that it's just objectively unreasonable to believe that there's some kind of armed robbery afoot? You have Washington, and in Washington the court held that reasonable suspicion alone, without some aggravating factor, does not justify pointing a weapon at a suspect during a traffic stop. You can also look at Greene, which a police cited for the notion that you can't grant qualified immunity when there are factual disputes as to whether the officers, in fact, had a safety concern. That case also involved a traffic stop, and the machine mistakenly read the plate as being a stolen vehicle, and the officers pulled the weapon at that point, and yet this court held that in the absence of a reasonable safety concern, there was no need to pull the weapon. And that was despite the fact that the officers had something other than reasonable suspicion, which is entirely what this case is about. This case lacks all of the objective factors that existed in every single case cited by appellants. In this case, you don't have appellants saying that they saw a weapon or a bulky item or anything they thought was a weapon before approaching Mr. Hobson. They also were not aware of any crime having been committed, let alone a violent crime. They were just going off on suspicion. Appellants had not received a tip from any informant that Mr. Hobson was armed or dangerous, or that he was about to commit a crime. Right, but what clearly established law says that all of those circumstances are required? What Washington says is that you need something more than just reasonable suspicion. You need objective criteria to conclude that somebody is armed and dangerous, because otherwise, every time you have reasonable suspicion without any objective criteria that leads you to believe that the person is armed and dangerous, then you could pull a weapon or frisk somebody, and that's not the law. The law is that you are required to point to objective evidence to pull a weapon at a suspect, and what you have here is the absence of all the facts that I was listing them. There was also Mr. Hobson never made any sudden movements to suggest that he was reaching for something. By appellants' own account, he was not attempting to flee. He was not resisting arrest. He was not verbally abusive. He was not uncooperative. At the time appellants approached him at gunpoint, they were not aware of Mr. Hobson's prior criminal record, and in fact, you look at appellants' own declarations, you see that when Mr. Hobson arrived at the scene, appellants' own perception of the situation changed, and let me walk you through Appellant Alexander's declaration for this point. If you go to ER 51 and 52, Appellant Alexander witnesses Mr. Hobson, I mean, pardon, Appellant Alexander witnesses Mr. Jones acting suspiciously in the parking lot, and he witnesses this behavior for 15 minutes, and Mr. Jones at this point is Mr. Hobson is nowhere to be found. Mr. Hobson arrives at the gas station 15 minutes later, at which point Mr. Hobson converses with Mr. Jones and they exchange a few items. At this point, Appellant Alexander's own declaration says that he now perceived the two men to be engaged in, quote, criminal activity. He no longer believes, drawing all inferences in favor of Mr. Hobson, he no longer believes that the two men are casing the gas station for robbery. He believed that when Mr. Jones was by himself, but that perception changed when he witnessed Appellant Alexander, when he witnessed Mr. Hobson interact with Mr. Jones, and so while appellants, for purposes of their briefing, are claiming that they had a safety concern, the declarations never claim that because they never had any. So at the end of the day, what you have is an individual who was parking his vehicle multiple times, looking around and acting nervous, a second individual who comes and talks to his friend, and at the end of the day, the police response was six police officers approached the vehicle at gunpoint in broad daylight by their own account, and the suspects never assisted arrest, were fully cooperative, obeyed police commands, and at the end of the day, the state criminal trial court dropped all charges because there was no reasonable suspicion to begin with. Every case cited by appellants, including the ones they just talked about, Alexander, Smith, Williams, one of the aggravating factors mentioned in Washington existed. So an Alexander, for example. I guess the difficulty I have with this is that, you know, we're looking at this in hindsight and there was an event that was happening in real time, and part of the qualified immunity analysis, part of what he's trying to do is to give officers the ability to make those snap judgments. He may have been incorrect here in his perceptions of what was actually afoot at the gas station parking lot, although it turns out that your client had a gun and he wasn't supposed to have that, he was able to get out of those charges by arguing that this stop shouldn't have happened, so that got taken care of. But at the end of the day, isn't the qualified immunity analysis trying to give officers some leeway to be able to make these judgments without the fear of liability? Qualified immunity also looks at what the law is. You can't just ignore that. And the law here is that every time this court has held that there was no constitutional violation when an officer pointed a weapon, there were objective aggravating factors that permitted the officers to draw the gun. And the suspects matched the clothes they were wearing with the suspected robber. That, and under those circumstances, the officers were entitled to pull their guns. And that, under Washington, meets the specific information prong, and also under Washington it meets the safety concern because, and the fact that the stop closely followed a violent crime. If you look at... But counsel, we, I mean, we've been instructed by the Supreme Court multiple times that we are not to apply the qualified immunity analysis, and particularly the second prong, with generality. It has to be very specific. And you're citing repeatedly Washington because the crime had already occurred. But is there a case that says that when officers believe in a crime that's to occur, that it's a violation of the suspect's constitutional rights if the officers approach them with guns drawn? There's clearly established law that you need something objective, aside from reasonable suspicion, to draw a weapon. And that has been the law in the circuit. You can look at Washington. But you have to apply it to these circumstances. And that's what I'm asking you to do if you can. Something objective, you believe a violent crime is about to occur, and you intervene. Where is the case law that says that that is something reasonable officers should know they can't do? Reasonable officers know that they cannot point their weapons at a suspect unless they have objective criteria. And the factual circumstances of that, the test here has never been that the factual circumstances have to be identical. But this court has... Well, when you keep talking about objective factors, and I think it's important that there was no response to the motion for summary judgment in the trial court. So your clients can't just rely on their allegations to support their claims of constitutional violations. When they were faced with declarations under oath about the officer's objective observations, what they saw, what they believed, they had to respond, and they didn't do so. So the undisputed facts are that one of the individuals, Mr. Jones, was apparently casing the gas station for 15 minutes and acting very suspiciously. And then Mr. Hobson joined him in the vehicle. And the undisputed facts are that the officer believed they were about to commit an armed robbery. So why is that not objective criteria that allows them to intervene and stop a crime, which is what they believed they were doing? Nobody's saying that the officers could not have intervened. Even if you assume that there were enough objective facts for the initial stop, which was the cranking of the neck, the reparking of the vehicle, Mr. Jones acting nervous, even if you assume that to be true, and that justified the stop in the first instance, if you assume that, the officers have not pointed to any objective evidence to assume that Mr. Hobson was armed and dangerous. Counsel, was Mr. Hobson representing himself in the district court? He was not. He's a pro se litigant, and we were retained for purposes of this appeal. Yeah. So in the district court, he was representing himself. He didn't have counsel. Exactly. And did the district court find that there was an issue of fact regarding the use of force? Yes. And wouldn't that preclude the grant of qualified immunity if there is an issue of fact regarding the use of excessive force? Yes, Your Honor. That's what the district court found. And in fact, for example, if you look at Green, that is exactly the holding in Green, which our police sites do throughout the brief. So we have no jurisdiction. If there is an outstanding issue of fact, we don't have jurisdiction to resolve the interlocutory appeal. That is correct, Your Honor. And that is the first argument in our brief. The appeal that appellants have brought do not take the facts in the light most favorable to Mr. Hobson. They ignore the district court's factual conclusions that nothing in the record at this point supports the notion that they believed, reasonably or otherwise, that Mr. Hobson was armed and dangerous. And because there's a factual dispute as to that... But, counsel, they're not disputing that they approached the vehicle rapidly, that they had they pulled Mr. Hobson from the vehicle. They don't dispute any of those facts. So there doesn't seem to be a dispute of fact at all about what force was used. It's clear. It's undisputed for purposes of their motion. So I don't think we're in the land of there's a disputed issue of fact that precludes the interlocutory appeal. The question is whether there's any clearly established law that the officers could not do these things that they don't dispute that they did. Was there anything in the record about whether or not he physically touched the plaintiff and yanked him out of the car? Was there anything in the declaration that addressed that point of the excessive force claim? No, not in the declarations. They do not address this point. Also, their declarations do not address the point that Mr. Hobson makes, which is that they pointed his weapons at him. And so at the end of the day, you have a scenario where two men are converging in a vehicle and one of them was acting suspiciously. But nobody saw a weapon. Nobody received a tip. Nobody made sudden movements to suggest that they were reaching for a weapon. Okay, so none of that's disputed, right? None of that's disputed. You keep repeating that assessment of the situation and you didn't answer my question, which is, you know, if none of that is disputed, it's undisputed that the officers approached with weapons drawn. They approached rapidly. They didn't announce that they were officers and they yanked him from the car. Then the question is, is there clearly established law that, based on the also undisputed evidence that was submitted, what they observed, that they believed that an armed robbery was about to occur? So all of that's undisputed. Then it's a clearly established law that they couldn't do what they did. I will point this court to Washington and to Greene. And also, I will note that Robinson, which is an en banc decision, affirmed Greene. I mean, affirmed Washington. And Washington clearly notes that in the absence of court- I'm sorry, counsel, can you remind me of the facts of Washington? Is that the case where they shot the individual in his home? No, Washington is a scenario where the officer suspected that two individuals in a vehicle were suspected armed robbers. And they pulled over the individuals at gunpoint and the court held that doing that, despite their suspicion that the men were involved in an armed robbery, was unconstitutional. But was that even an excessive force case, though? So it was not an excessive force. It was a search and seizure case. But in deciding whether the actions of the officers amounted to a search or an unconstitutional seizure, the court effectively did an excessive force analysis. Because it was whether the force they used, meaning pointing their weapons, rise to the severity level of force to say that it was an unconstitutional seizure. So it was effectively an excessive force claim. And in fact, if you look at Robinson, Robinson relied on Washington, which is a search and seizure case, to find, in the context of an excessive force claim, that- to find the same thing. That in the absence of some aggravating factor, like a specific information that a violent crime is going to occur, or specific information that the suspect is armed and trying to flee, or something of that nature, some aggravating factor, pulling a weapon is simply unconstitutional. And here- Counsel, in the declaration, Detective Alexander said, based on his training and experience, Detective Alexander believed Jones and Hobson were engaged in criminal activity, nothing more specific than criminal activity. And knowing that traffic stops are especially dangerous, Detective Alexander called for backup. So no indication that in- that this particular individual posed a threat because of his size or because of the way he was acting, but just kind of a general statement that they were engaged in a criminal activity. As you noted, the robbery issue was out of the picture at that point, correct? Exactly. And so in the absence of objective criteria, criminal activity, like Appellant Alexander says in this declaration, could have been non-violent. And so appellants cannot claim in their briefing that they reasonably believed that the suspect was armed and dangerous, when it's clear from their declarations that armed robbery was no longer what Appellant Alexander believed was the case. Why is that clear from the declaration? I came with exactly the opposite conclusion, that all of the activity of casing- apparently casing the gas station, vertically looking around for cameras, purportedly moving the vehicle, all of that gave rise to the suspicion that an armed robbery was about to occur. So I will point to ER 51 and 52. In ER 51, Appellant Alexander goes through all the details as to why he believes that Mr. Jones was casing the gas station for a robbery. After witnessing Mr. Jones parking and reparking his vehicle, cranking his neck, and acting nervously, Appellant Alexander concluded that he- or he had reasonable suspicion that- that's what he claims- that Mr. Jones was casing the gas station for a robbery. 15 minutes later- And so your argument is that that doesn't mean that an associate, which he believed Mr. Hobson was, is included in that suspicion? So if you look at ER 52, when Appellant Alexander goes through what he witnessed when Mr. Hobson arrived, it's that Mr. Hobson arrives 15 minutes later, he converses with Mr. Jones, he exchanges a few items with Mr. Jones, and I believe in paragraph 18 in ER 52, Appellant Alexander says the two men were engaged in criminal activity. That was his suspicion. But criminal activity- Right. But the whole rest of the declaration is about the belief that it was an armed robbery. I don't think that we can plausibly read this declaration to suggest that Detective Alexander's suspicion somehow downgraded over the course of this interaction. It says the opposite. I think it says the opposite before Mr. Hobson arrived, and when you read that declaration, it becomes evident that Mr. Hobson's arrival changed the assessment of the situation. It was no longer clear to Appellant Alexander that he was casing- that the two men were casing the gas station for a robbery. He uses the terms criminal activity. And drawing all inference- Isn't that a reference to the only criminal activity that's discussed in the declaration, which was the armed robbery? No, it could also be an indication of unknown criminal activity that could have been non-violent. And at this stage of the proceedings- So somehow, after watching this for 15 minutes, and somebody appears, gets in the vehicle, things happen, suddenly now that sentence that the officer believes it's criminal activities, but means that he's not- he's no longer worried about an armed robbery. That's not going to happen. Maybe it's a drug transaction. I mean, that's what we are supposed to reasonably believe that declaration to state. I think that's a reasonable interpretation of the declaration. Because if the officer still believed that it was a- they were casing, he would have- could have included that after Mr. Hobson arrived. But I wanted to ask you this question procedurally. The amended complaint that was filed by the- the complaint that was filed by Mr. Hobson pro se was done under penalty of perjury. So doesn't that- can't the court consider that in the motion for summary judgment as his declaration? Yes. And the district court in footnote 2 pointed exactly to Jones- Blanas v. Jones, which is a Ninth Circuit case, that holds that verified complaints are sufficient to oppose summary judgment. And that's- And in that verified complaint, he said that there was no- that he had not engaged in- let me see, what did he say? There was no probable cause and no suspicion- So in other words, he was not engaged in any criminal activity from his declaration, from his point of view. That is correct. And at the end of the day, what you ended up having is six officers approaching Mr. Hobson at gunpoint, in broad daylight, and despite the fact that Mr. Hobson and his- and his associate did not resist, were cooperative at all times, obeyed police commands at all times- Isn't that after the fact, counsel? I mean, you make much of that we can't consider that they actually did have a gun, because they didn't know that at the time, but they also didn't know all these things that you're alluding to now, whether they cooperated. I mean, all of that happened after they made the decision to approach. So after they approached him at gunpoint, but we're also arguing here that the force they used in dragging Mr. Hobson out of the vehicle was also excessive. So at the point where it became evident that they were not trying- that Mr. Hobson was not trying to excessive, was not uncooperative, at that point, there was absolutely no need to drag him out of his vehicle, yank his left arm, and forcefully handcuff him. What are the- what are the damages you're claiming, because- were there physical injuries from the force, or is it just the indignity of the event? What are the damages here? Because he wasn't actually charged in connection with- I mean, he- the charges were vacated after the- the motion to suppress was granted. Mr. Hobson's constitutional rights, regardless of his injuries, occurred. Well, on page 83 of his complaint, he discusses what his injuries are. He says depression, anxiety, loss of sleep, nervous, and a fear of retaliation, as well as his vehicle. So the emotional distress that a person goes through, and the Washington court noted that. Everybody has a right to be free from the humiliating experience of being pointed a gun and dragged out of a vehicle when police only have reasonable suspicion. Nobody's saying that the officers could not have done anything. Like the district court said, they could have gone to the car, knocked on the window, and said, what are you doing here? Can I see your license? But that's not what they did. They used the threat of deadly force, six of them did, when there was no objective criteria that Mr. Hobson posed a safety threat to them or to anybody. And that is unconstitutional. All right, counsel. You've greatly exceeded your time. We helped you. Are there any further questions? Rebuttal? Let's start with two minutes. Two minutes. Thank you, Your Honor. As you can see, the plaintiff's main case that he's relying on to show that the law is clearly established is Washington. I'd like to just quickly explain why Washington cannot clearly establish the law in this case. One, Washington wasn't even an excessive force case, as Judge Bress noted. And it didn't create any law relevant to the issue in this case, let alone sufficiently concrete, clearly established law that could show that the plaintiff wins in all gunpointing cases going forward. Well, that's not the argument. That's not the argument that plaintiffs win in all gunpointing cases going forward. That's just, that's a stretch on your part. Okay, I mean, yeah, but it's not a stretch to say that Washington was not an excessive force case. So it didn't create any law on excessive force. So if it didn't create any law on this issue, it definitely didn't create any clearly established law. All the plaintiffs relied upon language from Washington is dicta. And because dicta is not law, it definitely cannot be clearly established law. The Fifth Circuit recently put out a very good opinion on qualified immunity. So that's one of the four commandments of qualified immunity law is that you can't use dicta to withhold immunity from an officer. And three, the facts of Washington are significantly different from this case. The officer in that case stopped two suspects for absolutely no reason whatsoever. The officer didn't point to a single reason why he stopped these people. And the reasons he did provide were just complete nonsense. This case just isn't like Washington at all. And Washington wasn't an excessive force case. So it doesn't have anything to do with this case, to be frank. On the factual issues and jurisdiction point that Judge Bade was getting into, I think she has her finger on the pulse of this case. The defendants don't dispute any of the material allegations in this case. They will admit for the purposes of this appeal that they approached his vehicle at gunpoint because they thought he was engaged in suspicious criminal activity like the police and the gas station. Did the officers think that Mr. Hobson was casing the store for a robbery? Yes, they thought he was Mr. Smith's co-conspirator and they were about to go grab the gas station together. Where in the declaration was Mr. Hobson addressed? In the declaration? I mean, if you look at the declaration as a whole, the obvious takeaways My specific question to you is, where in the declaration was the officer's suspicion regarding Mr. Hobson addressed? I don't have the declaration right in front of me, but to my recollection, if two people are sitting in the same vehicle, and the officer suspects that they're about to go commit an armed robbery, they have reasons to stop all of them. But they didn't say that in the declaration that they suspected the two of them of going to commit an armed robbery. They suspected Mr. Johnson, but they said when Mr. Hobson got in the vehicle, they suspected criminal activity. Right, and the criminal activity referred to there was that they were casing a gas station for an armed robbery. I mean, if there's two people standing right next to each other, and you think that one of them's about to go point a gun in someone else's face, it's reasonable to assume that his buddy standing right next to him is part of the plot. And you can go stop both of them. They can't say, oh, I'm sorry, sir, you can go on your way. I just want to stop this one person. Well, counsel, you're being a little facetious now, and I don't really appreciate it. But I'm just asking you what the record shows. The record shows that these officers both believe that the two suspects were about to go commit an armed robbery, and they pulled their gun as a reasonable safety precaution. I don't think there's a different reading of the—I don't think there's a reasonable reading of the record in this case that suggests otherwise. Any other questions? All right, thank you, counsel. Thank you to both counsel for your arguments.
judges: RAWLINSON, BADE, BRESS